IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-00769-MSK

TYRONE DAVIS,

    Applicant,

v.

BLAKE R. DAVIS, Warden,

    Respondent.

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This matter comes before the Court pursuant to Mr. Davis's (Petitioner's) Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (# 1). Respondent filed a Response (# 12). Petitioner did not reply. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2241 and 1331.

### II. Background

Petitioner currently is in the custody of the United States Bureau of Prisons (BOP) at the United States Penitentiary in Florence, Colorado. On January 7, 2010, a BOP officer reported that he saw a fight between Petitioner and another inmate and removed a knife from Petitioner's possession after he placed the inmates in restraints. Resp., Ex. A at 9. On February 24, 2010, Petitioner received an incident report (IR) for fighting with another person (Code 201) and for possession, manufacture, or introduction of a weapon, dangerous chemical, explosive or any

ammunition (Code 104). Resp. at 2.

Upon review of the attachments to the Response, the Court finds that Respondent fails to set forth the procedural events that took place prior to February 24, 2010, which appear to be the basis for Petitioner's claim that he received a defective written notice of the charges on three separate occasions. These events are provided below.

An incident report (IR) was given to Petitioner on January 8, 2010. *See* Resp., Ex. A at 27. The IR was suspended pending an FBI referral and subsequently was released by the FBI on January 26, 2010 for processing. Resp., Ex. A at 28. The investigating officer stated on the IR form that he advised Petitioner of his rights on January 26, 2010, and recommended that Petitioner remain in his current status and the IR be forwarded to the Unit Disciplinary Committee (UDC) for a hearing. *Id.* On January 29, 2010, a UDC hearing was held, during which Petitioner offered a statement that he did not have a weapon but was fighting with another inmate. *Id.* at 27. The UDC also referred the IR to the DHO. *Id.* The DHO held a hearing on February 17, 2010, at which time the IR was suspended and the staff was instructed to reinvestigate, rewrite the report and include more specific information about the fight, and hold a second UDC hearing. *Id.* at 26.

It appears that the rewrite was completed on February 24, 2010, and routed to the investigating lieutenant, but for some unknown reason the rewrite was inadvertently returned to the USP lieutenant who wrote the report. *Id.* at 24. A second IR was given to Petitioner on March 8, 2010, *id.* at 11, and a second UDC hearing was held on March 30, 2010, during which Petitioner stated he did not have a knife and was not fighting, *id*. Due to this error in routing, there was a delay of about twelve days in the delivery of the IR to Petitioner and the holding of

the UDC hearing. *Id.* at 11 and 24. The UDC determined a referral to the DHO was required. *Id.* at 11. Petitioner requested that at the DHO hearing a staff representative assist him and a witnesses provide a statement that Petitioner did not have a knife. *Id.* As a result of the hearing, the DHO dropped the weapon charge and found that Petitioner committed the act of fighting based on the IR, the witness statement, his injuries, the other inmate's injuries, and the video footage. *Id.* at 8-10. Petitioner was sanctioned to 30 days of disciplinary segregation, 120 days loss of commissary and telephone access, and 27 days loss of good conduct time. *Id.* at 10.

Petitioner contends his disciplinary conviction was obtained in violation of his due process rights. Specifically, Petitioner asserts that (1) he received ineffective and defective written notices of the charges against him; (2) he was denied the right to present the video surveillance of the alleged incident; (3) he was denied his right to call an inmate as a witness; (4) he received inadequate representation because his staff representative failed to interview the witness or obtain a written statement, review the surveillance video, or investigate ; and (5) the DHO's findings were based on insufficient evidence. Pet. at 3-9.

### III. Analysis

**A. Standard of Review**

In considering Petitioner's filings, the Court is mindful of his pro se status, and accordingly, reads his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not relieve Petitioner of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the

substantive law, and in these regards, the Court will treat Petitioner according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994).

**B. Review of Disciplinary Proceeding**

As a federal prisoner, Petitioner has a constitutionally protected liberty interest in his earned, good conduct time. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Because Petitioner was sanctioned the loss of twenty-seven days of good conduct time at the DHO hearing, he was entitled to due process at the disciplinary hearing in question. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Rather adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied. *See id*. at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). There also must be some evidence to support a disciplinary conviction. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *see Mitchell*, 80 F.3d at 1445. The disciplinary decision will be upheld even if the evidence supporting the decision is "meager." *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457). Constitutionally adequate due process at a prison disciplinary hearing does not require that a petitioner be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense. It only requires that the petitioner be informed of the charges to enable him to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564.

"[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *See Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)). A review of a petitioner's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445; *e.g.*, *Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause), *cert. denied,* 546 U.S. 1221 (2006). Finally, prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).

**1. Notice of Charges**

Under *Wolff*, due process is provided to an inmate when he receives notice of the charges against him within twenty-four hours prior to a disciplinary hearing. Petitioner received a written notice of the incident report and the charges asserted against him, first on January 8, 2010, and subsequently on March 8, 2010. The first DHO hearing was held on February 17,

2010, and the second one was held on April 19, 2010. Petitioner had well over twenty-four hours between the date he was given a notice of the charges against him and the date either disciplinary hearing was held. Furthermore, Petitioner's ineffective and defective notice claim is devoid of any factual support that he did not receive a notice of the charges against him twenty-four hours prior to his disciplinary hearings. Petitioner's notice claim, therefore, is not cognizable in a federal habeas action. *Holman v. Booker*, 166 F.3d 347, *4 (10th Cir. Dec. 14, 1998) (unpublished op.) (citing *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992).

To the extent that Petitioner may be challenging the substance of the notice, on both January 8 and March 8, 2010, he was informed that he was being charged with possessing a weapon and fighting with another inmate on January 7, 2010. Constitutionally adequate due process at a prison disciplinary hearing only requires that an inmate be informed of the charges to enable him to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564. Petitioner was provided with sufficient information regarding the incident to prepare for his disciplinary proceedings.

Also, prison staff's failure to adhere to administrative regulations does not state a constitutional violation. *Hovater*, 1 F.3d at 1068 n. 4. Even if the Court were to consider Petitioner's alleged violation of 28 C.F.R. § 541.11, Table 2, and § 541.15(a), his claim still fails.[1] Under 28 C.F.R. § 541.11, BOP staff shall "advise each inmate in writing . . . of the disciplinary system within the institution and the time limits thereof." § 541.11(b). In both

---

[1] In 2011, 28 C.F.R. § 541 was revised. Sections 541.11 and 541.15 no longer are part of § 541. Petitioner's incident report, however, was processed in 2010. The Court will rely on 28 C.F.R. § 541 (2010) in reviewing Petitioner's claims.

§ 541.11 and Program Statement (P.S.) 5270.08 (Chap. 2), Table 2,[2] titled "Time Limits In Disciplinary Process," the time limits are stated for BOP staff to notify an inmate of a disciplinary infraction. The first two entries on the Time Limits Table, "Staff becomes aware of inmate's involvement in the incident" and "Staff gives inmate notice of the charges by delivering Incident Report," are separated by a time period described as "ordinarily maximum of 24 hours." The third and fourth entries of the table describe the time frame for the UDC hearing and the DHO hearing. Specifically, the fourth entry describes the time frame for holding the DHO hearing as a "minimum of 24 hours" after the inmate receives the notice of charges. A note to the table explains that "[t]hese time limits are subject to exceptions as provided in the rules."

One of these exceptions is set forth in P.S. 5270.08 (Chap. 5)(1)(b), and reads in part as follows: "Staff shall conduct the investigation promptly unless circumstances beyond the control of the investigator intervene," and "[i]t is suggested that the investigation be initiated and ordinarily completed within 24 [hours]" of an investigator being appointed. Different rules, however, apply "[w]hen it appears likely that the incident may be the subject of criminal prosecution." P.S. 5270.08(5)(1)(b)(1). In such circumstances, "the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or **other investigative agency** interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." *Id.* Thus, the twenty-four hour period referenced in Table 2 is found to be inapplicable where the conduct in question is referred to an investigative agency.

---

[2] On July 8, 2011, the BOP rescinded PS 5270.08. Again, because Petitioner's incident report was processed in 2010, the Court will rely on PS 5270.08.

Under P.S. 5270.08 a notice of the charges to Petitioner was not required until January 27, 2010, the day after the FBI released the incident for processing. The tolling of time between the FBI referral and the notice of charges is inapplicable, however, because Petitioner received a notice of the charges on January 8, 2011, even though the incident was referred to the FBI. The UDC hearing was held January 29, 2010, and the first DHO hearing was held on January 30, 2010. The Court finds nothing in Petitioner's notification for the first DHO hearing violates § 541.11 or PS 5270.08.

Nor does the DHO's determination that a reinvestigation, a rewrite of the incident report, and a new UDC hearing was required violate any part of §541. Section 541.17(e) authorizes the DHO to refer the case back to the UDC for further information or disposition, which is what the DHO did in Petitioner's situation.

Finally, Table 2 in § 541.11 allows for exceptions to the time limits as set forth under the rules. Section 541.15(k) provides that time limits imposed in this section may be extended when good cause is shown by staff or inmate and documented on the record. Here, documentation was provided that for an unknown reason when the rewritten report was mailed to the investigating lieutenant the report was inadvertently returned to the BOP staff member who rewrote the report. Although what may constitute good cause is not set forth in § 541.15(k), the Court finds the delay was short in duration, approximately twelve days, and the report was resent to the investigating lieutenant as soon as the mistake was realized. Furthermore, Petitioner does not identify any harm that resulted from the short delay. Therefore, good cause shown, § 541 was not violated.

Petitioner's ineffective and defective notice claim lacks merit and will be denied.

### 2. Surveillance Tape Video/Documentary Evidence

Petitioner asserts that his request to present documentary evidence at his disciplinary hearing was denied and as a result he was unable to introduce a surveillance video tape that would have shown exculpatory evidence. Pet. at 7.

The Tenth Circuit has found an inmate's due process rights are violated when the DHO unjustifiedly refuses an inmate's request to produce and review a video tape, *see Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007). However, the facts of *Howard* are distinguished from this case. In *Howard*, the inmate requested review of the videotape tapes prior to the DHO hearing, expressly requested that the DHO review the videotape at the hearing, the DHO declined to review the tapes, and the inmate raised the denial of the DHO's review of the videotape in his administrate appeal.

In contrast, Petitioner submits no documentation that he requested a review of the tape prior to the DHO hearing or for the DHO to review the tape. In the absence of an explicit request that was denied and the fact that the DHO reviewed the tape and relied in part on what he saw to find Petitioner guilty of fighting with another person, there is no denial of due process with regard to the videotape evidence.

Petitioner's videotape claim lacks merit and will be denied.

### 3. Right to Call a Witness

Petitioner asserts that he was denied his right to call an inmate as his witness in violation of his due process rights and 28 C.F.R. § 541.17(c). Although prison officials must consider an inmate's request to call a witness on an individual basis, errors in denying witness testimony are subject to a harmless error review. *Howard* , 487 F.3d at 813. Petitioner fails to assert in the

Application who he intended to call and what testimony this inmate would have provided. There is documentation provided by Respondent, however, that states Petitioner asked that an inmate named Shryrock testify on his behalf . *See* Resp., Doc. No. 20-1 at 13. Mr. Shryrock did provide a written statement that was considered by the DHO. *Id.* at 8 and Doc. No. 20-2.

The Court finds that Petitioner was given the opportunity to identify a witness, the witness provided a written statement, and the DHO considered the statement. Petitioner, therefore, was provided with all the process he was due.

Under § 541.17(c), an inmate "has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security." Petitioner submitted a name of a witness and the witness provided a written statement on Petitioner's behalf. The court finds no violation of § 541.17(c).

Petitioner's denial of witness claim lacks merit and will be denied.

**4. Inadequate Representation**

Petitioner asserts that his staff representative was ineffective because he refused to interview an inmate witness or obtain a statement from the witness, and he failed to review the security videotape of the incident.

"A prisoner does not have a general constitutional right to have a staff representative assist him during the disciplinary process." *Jordan v. Wiley,* 2009 WL 1698509, *9 (D. Colo. June 17, 2009) (citing *Wolff,* 418 U.S. at 570)), *aff'd*, 411 F. App'x 201 (10th Cir. 2011) . "Instead, due process requires that inmates be provided with the aid of a staff representative only

where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.' " *Id.* (quoting *Wolff,* 418 U.S. at 570). Where there is no constitutional right to staff assistance, there can be no due process violation based on inadequate staff assistance. *See, e.g., Duarte v. Turner,* No. 93-2427, 46 F.3d 1133, *3 (7th Cir. Feb. 10, 1995) (unpublished) (citing *Wolff*, 418 U.S. at 570).

There is no indication that the issues involving the IR were complex or that Petitioner is illiterate. The DHO report shows that Petitioner's staff representative, contrary to Petitioner's claims, obtained a witness statement from the inmate who Petitioner identified on the Notice of Discipline Hearing form as a witness. *See* Resp., Doc. No. 20-1 at 8 and 13. Furthermore, Petitioner fails to assert how the staff representative's review of the surveillance video tape would changed the findings made by the DHO. Petitioner, therefore, was provided with all the process he was due.

Petitioner's claims asserted pursuant to 28 C.F.R. §§ 541.15(j) and 541.17(b) also are without merit. Under § 541.15(j), the UDC is required to ask the inmate to chose a staff representative and to provide the names of witnesses. Petitioner was afforded this opportunity. *See* Resp., Doc. 20-1 at 13. Under § 541.17(b), a warden, the DHO, reporting officer, investigating officer, a witness to the incident, or a UDC member may not act as a staff representative. Also, a staff representative is to assist an inmate by talking with witnesses and presenting favorable evidence to the DHO. § 541.17(b). Petitioner's staff representative was not one of the individuals who are disallowed under § 541.17(b). *See* Resp., Doc. No. 20-1 at 15. The staff representative obtained a statement from the witness identified by Petitioner and

entered a statement at the DHO hearing that the IR did not describe the alleged weapon. The staff representative did not indicate at the DHO hearing if he had reviewed the video tape of the incident, but as stated above, Petitioner does not assert what evidence the staff representative would have been able to present had he reviewed the surveillance video tape.

Petitioner's ineffective staff representation claim lacks merit and will be denied.

### 5. Insufficient Evidence

Petitioner contends that there is insufficient evidence to support the DHO's conclusion that he was guilty of fighting. The Court finds otherwise. The DHO stated his finding was based in part on the written account of Lieutenant Whitney who stated that Petitioner had a mild abrasion on his left jaw, what appeared to be a human bite mark on his left biceps, and abrasions on his knee caps. Lieutenant Whitney also asserted that the other inmate involved in the fight had multiple puncture wounds and a contusion to his right shoulder. Lieutenant Virgil reported that he responded to the incident, found Petitioner had blood on the back of his shirt, and was told that Petitioner and the other inmate were involved in a fight. Lieutenant Castro, who also responded to the incident, found Petitioner and the other inmate in restraints and Petitioner had blood on the back of his shirt.

The DHO reviewed the video tape. He found an inmate believed to be Petitioner entered the cell where the other inmate involved in the fight was located. Doc. No. 201- at 9. Other inmates approached and opened the cell where Petitioner and the other inmate were located. *Id.* When the cell door was opened the video camera captured an altercation taking place inside the cell. *Id.* Two inmates then emerged from the same cell; one of the inmates was believed to be Petitioner. *Id.* The inmates were embraced as they exited the cell and fell to the floor. *Id.* The

inmate on the bottom, believed to be Petitioner, continued to struggle, while the inmate on top appeared to control the inmate on the bottom. Petitioner and the other inmate then stood up and walked away. *Id.*

The DHO also relied on a written statement by Petitioner's witness. The witness stated that he saw the entire incident and that Petitioner and the other inmate were involved in a fight. The Court finds the DHO's determination that Petitioner was guilty of fighting meets the some evidence standard. *See Hill*, 472 U.S. at 455-56; *see also Mitchell*, 80 F.3d at 1445.

Petitioner's insufficient evidence claim lacks merit and will be denied.

### IV. Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (# 1) is DENIED. The Clerk of the Court shall enter judgment and close this case.

DATED this 25th day of October, 2011.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge